May it please the Court, my name is Bob Fischer. I represent the appellant, Mr. Robert Boozer. I'd like to reserve Mr. Boozer's time for a few minutes to answer some of the questions that have been submitted to the Court. I have five minutes for my reply. Your Honor, Mr. Boozer contends that for several reasons, the ICWA, the Indian Child Welfare Act, does not apply to the facts of this case. Primarily, Mr. Boozer contends that ICWA does not apply because the tribal court clearly lacks jurisdiction over KWB, his daughter. And I don't think this issue was really addressed in the briefs, but what is the district court's jurisdiction over the proceeding that you've brought? The district court's jurisdiction is under the ICRA, the Indian Child, or the Indian Constitutional Rights Act, under 13028, and 1303, where habeas corpus can be sought by Indians and non-Indians alike, in order to bring forth a violation or an alleged violation of a constitutional magnitude. Here, a liberty interest. Now, what is the liberty interest exactly? The liberty interest here, Your Honor, is the right of Mr. Boozer to parent his child. And this is a fundamental liberty interest, and that was expressed in Troxell v. Granville. How does that give rise to a habeas? Well, in habeas corpus, and it was, it rises to the level of because Mr. Boozer has alleged that his daughter is being unlawfully detained on the tribal court reservation by a tribal court order. The Judge McDonald of the district court conceded that that could be, and that was an issue that could be addressed by the district court, and was addressed and was confirmed in Dement v. Oglala, Sioux. That was in 8th Circuit Court, 1980, 1984, which is in the, in the brief, Your Honor. Let me ask a couple of questions. He has never been deprived of custody as an unfit father, is that correct? No, he has not, Your Honor. And there's nothing under the Indian law that relates to child welfare that gives grandparents any right, is there? There's nothing under the ICWA that gives grandparents a right, and it certainly gives the grandparents no greater right than what was found to be the case in Troxell v. Granville, which is that you have to prove a parent unfit before you invade his liberty interest in the parenting of his child. And no one is attempting to bring such a proceeding against your client. That is correct, Your Honor. What we have here is a guardianship proceeding, which, and the guardianship proceeding, and, Your Honor, if I might, did I answer your question as to 13028 and how? That I'll let you know. Go ahead. Okay. Under the guardianship action, actually, a child custody case under 1911a, that's defined under 1903.1. Child custody means a foster care placement, pre-adoptive or adoptive placement, or termination of parental rights. A guardianship action is none of these. So that is one of the reasons why Mr. Boozer contends that ICWA does not. Just one more question. This child is three-quarters Caucasian? That's correct, Your Honor. Is she an Indian child? That has been alleged. It's never been. We have no facts in front of us to no factual basis other than that allegation. And the main thrust here, Your Honor, is, and Your Honors, is this, is that in the Mississippi Band of Choctaw Indians v. Holyfield, a 1989 Supreme Court case. I can't hear. Which case was that? Mississippi Band of Choctaw Indians v. Holyfield, 490 U.S. 30 of 1989. That's the mainstay, the major thrust here, is that the only Supreme Court case to date which has definitely looked at the provisions of 1911A, and it looked at the provisions of and indicated that under the domicile and the residency domicile language used in 1911A, that because Congress did not define that in the Act itself, residency and domicile, it indicated that Congress intended that the Federal laws of domicile apply. Well, we're jumping all over the place from various questions, and I have some others. But as to this one, the statute says residence or domicile. So what do you do with that? I'm sorry, Your Honor? The statute says residence or domicile. So although we know from Holyfield that the domicile of this child is probably in Georgia with her father, what do we know about her residence? Well, and that's – I put that note basically, Your Honor, where I just – and I'm trying to answer this. And footnote that at page 8 of my opening brief, and where basically there's a case law that says – and the footnote, too, is the Court concluded, and that's the Holyfield Court, that due to the lack of a nationwide uniform definition of domicile, Congress must have intended a uniform Federal law of domicile. Domicile means residency with intent to remain. Basically, there's also case law throughout the briefs that mere physical presence of a child on – anywhere does not indicate a domicile. So certain – certain States are using these terms of art interchangeably. A residence, residence meaning domicile, a residence with intent to remain, and domicile. They're using these – so Holyfield says we've looked at residency. We've looked at domicile. And we tell you this, that parents, Indian parents – But the problem in Holyfield was the opposite. The child was not resident, but maybe she was domiciled, right? That is – she was – she was – she was – She never lived on the Indian reservation, ever. She did not, ever. She never touched the reservation. They never dealt with the question of residence. They – well, and I think they did, Your Honor, if I might, say that they did because they're saying residency and domicile mean the same thing. Where did they say that? Let me ask one more question. What is the status of any proceedings in the tribal court? The status of the proceedings in the tribal court is that – and that goes to the futility argument, also an exhaustion exception. I just want to know. We have – we have, Your Honor, we have just – we have requested a stay of the trial. It went to trial, and it was two days in trial. And then the memorandum appeared, of which I asked to have the record supplemented. The memorandum from the Colville Attorney's Office, representing at Colville Tribal Court. They contacted ex parte Judge Acock, the judge, the chief judge, and the trial judge, Judge Abbott, and indicated that they were talking to the Wilders and brought the Wilders in front of the Justice Committee and have asked the tribal court ex parte, in effect, that the Wilders are concerned that the father will be awarded visitation without supervision. And because of that, we believe that the judge was contacted, and it was improper for that contact. But what happened, meanwhile? Is there an ongoing proceeding, or isn't there an ongoing proceeding? Well, now, we've asked that the – that an outside judge from outside the – from the Colville Tribal Courts, a – You're trying to recuse the judge, essentially. Yes, exactly. So you're in the middle of proceedings, and you're trying to recuse him. We're in the middle of the proceedings, Your Honor. And we don't know when those proceedings are going to be. But what argument is there about – aside from everything else, why – why doesn't the case law at least require you to exhaust? And this is – this is why, is because – because of the foundations laid out in Holyfield that the – that the domicile follows that of the parent. All right. Can you show me where Holyfield says that domicile and residence are the same thing? The domicile follows that of the parent?  That domicile and residence are the same thing. I can refer you to, if I might, Your Honor, may I get that case? While you're getting it, as I read it on pages 47 to 51, it says that either domicile or residence on a reservation gives the tribe exclusive jurisdiction. In fact, it says domicile is not necessarily synonymous with residence. And one can reside in one place but be domiciled in another. And they're talking about – and this is why I'm – this is – they're talking about the residency as – as it – as it – as the State, as the States, the different States look to it. If – if – Let me just say one thing about time. This is a more complicated case than we usually get in a 10-minute, and don't worry about the time until I stop you. Go ahead. Thank you. Had – and maybe I can make it clear in a different way. Had Holyfield thought that residence was different than domicile, then the Holyfield court would have said, instead of the domicile being on the reservation and us looking to the reservation and the child's domicile where she's never – where there's two children, these two twins have never been, we're going to say that domicile is in the State of Mississippi or off the reservation. Holyfield court didn't say that. We're going to look at the 1911 – I absolutely cannot follow that. Well – They said that she was domiciled on the reservation. They didn't, therefore, have to consider whether she was resident on the reservation because she had to be either domiciled or resident on the reservation. Well, I think – The children, the twins. What I think was is that the Mississippi Supreme Court took the – took the basis of what you're indicating is that they took the fact that the children were off the reservation, residing off the reservation, and that's why Mississippi should have jurisdiction over this matter. The Holyfield court disregarded that argument, saying, we don't care whether – Because you said it's a matter of Federal law, it's a Federal statute, and she has to be domiciled or resident if she was – they were domiciled for Federal purposes. I really am not following your argument. Although, I mean, I think you have lots of interesting issues here, but that's what I'm having trouble with. All's I can say, Your Honor, is that the Mississippi Supreme Court took your – what you're arguing, or what you believe, what you think is the problem here. Mississippi says, we don't care where the parents were domiciled. We care where the children are now residents. And when – and then when Holyfield looked at 1911a, it said, we don't care what Mississippi thinks. The Mississippi Supreme Court thinks about residents. We believe that domicile is controlling. Okay. I still am not understanding your argument, but it's not worth going around about it anymore. The – as to exhaustion, your argument about why you don't have to exhaust hinges again on this residents were domiciled issue. Well, that's – there's – that's one of the issues. The other one is, is that there's three exceptions to the – to the exhaustion. One is that the jurisdiction was brought in bad faith or meant to harass. The second one is, is that it's a – it's a patently violative of an express preclusion. And the third one is, is that it – the exhaustion would be futile. In other words, there – the tribal court gives a remedy in theory, but not in fact. And we indicate is that not only is jurisdiction so clear that it violates preclusively federal law under 1911a, but also the tribal remedy here is theoretical only. There is no factual remedy. What we have here is, is that a jurisdictional – we have jurisdiction brought under a guardianship which does not lie under custody cases under 1911a, as I expressed. It doesn't fit the definition, number one. Number two is, is that the allegations that – It doesn't fit the custody because – could you just elaborate on that? Yes, I did. Child – 1911a indicates that jurisdiction is exclusive in a tribal court. I'm wondering why this isn't a child custody procedure. Because the child custody under 1903, Your Honor, 1903-1, that indicates that it defines child custody. And child custody is a foster care placement. Not essentially a foster care placement. Well, that was the argument so that we bring back in – that was my argument. But during the June 16th hearing, that was vehemently argued against, that it was not foster care placement. And that's in the excerpts of record, I believe, 50 through 68. Well, so after you exhaust it, it may turn out they don't have jurisdiction. That may be. But the question – it may well be. But the question is, why don't you have to exhaust? The question is why? Why don't you have to exhaust? In other words, it may well turn out, after you finish these proceedings, that we learn that either it's not a custody proceeding, so they don't have jurisdiction, or she's not an Indian child, so they don't have jurisdiction. There are lots of possibilities. But the question is, why don't you have to exhaust first? Well, the question is, why do we have to exhaust? I say we don't have to exhaust, and that's based on the rule of county. The reason for the exhaustion is, the reason for the exhaustion rule is this, is that the courts are – the Federal courts are saying, we want to enhance the power of the tribal courts, and – but we have to weigh that interest. And we weigh the interest of enhancing the tribal court's power by immediately adjudicating a deprivation of a fundamental right, fundamental constitutional right. When you weigh these, then exhaustion does not have to occur. And exhaustion does not have to occur when it's futile. For this – if the remedy is futile. And I – I'm giving you the extra time. Why don't we stop now, and we'll give you a couple minutes for rebuttal. Thank you. Thank you very much. Good afternoon. May it please the Court. I'm Tom Christie, representing the Confederated Tribes of Colville Reservation. And for the purposes of the arguments here today, I'm also arguing on behalf of the Wilders. As the Federal District Court properly determined, this case is not yet ripe for Federal review. While the appellant has alleged that there have been some civil rights violations, and challenges the jurisdiction of the tribal court, the appropriate forum for these complaints in the first instance is the Colville Tribal Court System, including the Colville Court of Appeals. And what we have here is a sort of temporary – or a short – a custody problem. Or at least a question of where this child is going to live. And it's been years that this hasn't been decided. Is that right? How many years since this all started? If I remember correctly, the mother died last year. And what happened at that point is the father was under a restraining order prohibiting him from any contact with the mother or daughter. The grandparents, the maternal grandparents, immediately on the mother's death, because the child needed to reside somewhere, needed to have some supervision. And obviously there was still this existing court order that prohibited contact. Isn't that the only thing that should have been determined? Number one, they should have dismissed the divorce action because that was mooted. And then they should determine whether there was any reason to deprive this father of his parental rights. And, in fact, as far as I am concerned, Your Honor, that's exactly where this case is now. No one has said that he's an unfit father. No one has started any kind of deprivation proceedings. Is that not correct? Currently, the father has supervised visitation, and that's pending the resolution of the hearing, a hearing which has been interrupted now. But there's never been any determination that he's an unfit father? To my knowledge, no. I do not see how there could be any jurisdiction for a guardianship proceeding. Other than the fact that at the time of the mother's death, there was an existing restraining order that prohibited the father from having contact. But that should have been determined a long time ago. This father, as far as the record goes, is the parent of this child and the only one entitled to her unless he's an unfit father. And that is certainly one of the issues to be discussed and raised by the tribal court. One other issue. Suppose the state, the tribal court, was to apply some other rule, that rule that said, we're going to decide between the grandparents and the father who's better for the child. A custody between parents sort of a rule. Then what? Could he complain about that if that was the rule that they applied? Well, certainly it would be a situation where the father could make that kind of an argument that that was inappropriate under U.S. constitutional law. Now, of course. When and where would he make that argument? It certainly could make that to the, well, the tribal court, the trier of fact, as well as to the Colville Court of Appeals. And if, in fact, it is a deprivation of due process, assuming that that's how it comes to pass, the Federal Court review would also be available at that point. There's a Supreme Court decision that came up from an appeal from the Supreme Court decision of the State of Washington, and the Supreme Court of the United States has said grandparents, in effect, don't have any rights. That's correct. They made that conclusion under the Federal, the U.S. Constitution. Right. However, one of the issues and one of the reasons why habeas is the remedy is that it's well settled that the U.S. Constitution doesn't apply to Indian tribes. That's what the Indian Civil Rights Act was passed for. It's to provide that mechanism for redress for procedural issues. Now, whether a tribal court would reach the same conclusion that the U.S. Supreme Court reached, I don't know. I assume it would. But that would be an issue that certainly could be raised at a court of appeals. What is the status of the proceeding before the tribal court? You know, it's pretty unconscionable to leave a child in limbo for this long. Your Honor, I've seen state court cases which have taken longer to adjudicate rights. However — That doesn't make it right. No. No, certainly not. Certainly not. And certainly the issue of making sure that KWB, the child in this particular instance, is supervised and has an appropriate home life is critical. And that's one of the issues that has been heard. There was a hearing that occurred, I want to say, three weeks ago. It went on for two days, at which point the father, Mr. Boozer, moved to stay the proceedings pending a motion for a mistrial as well as to recuse the judge. And since that point, I've not seen any pleadings. Now, one thing that I would like to note is that the tribal government itself is not a party to that action. I'm here today primarily, in fact, almost exclusively, to argue on behalf of the tribe maintaining and continuing its jurisdiction. The ultimate result is something that I'm sure the grandparents and the father will need to address inside the appropriate forum, which, of course, we believe to be the tribal court. Step back, as we did before. You agree that habeas is a proper remedy here, everything else being equal? If there was a showing of a violation of the Indian Civil Rights Act. In terms of jurisdiction, you think there is, that even though it involves child custody in some sense, and even though if this was a State proceeding, a 2254 would not be appropriate. But it's a different statute. It is a different statute. We believe that the U.S. Congress explicitly provided habeas as a remedy for a violation of the Indian Civil Rights Act. If there. Or the detention of a child where the detention is that the tribal court is making her stay here instead of go somewhere. But isn't letting her go to her father. At this point, I'm not particularly prepared to argue that particular issue. For the purpose of the argument today, I have assumed that if there is a civil rights violation that Mr. Boozer can demonstrate, then, in fact, it would be appropriate to issue a writ of habeas. Now, whether habeas itself is the appropriate remedy, that's another question. That is the question I asked. The next question is, what about Judge Fletcher's question? Is there a definition somewhere of an Indian child and how we know she is one? Yes. In the case of Santa Clara Pueblo versus Martinez, the U.S. Supreme Court left it up to each individual tribe to define tribal membership. In this particular instance, the Colville tribes have defined tribal membership as being an individual who is effectively one quarter blood quantum. In this particular instance, that would be KWB. Do you agree that it would be a violation of the father's civil rights to have deprived him of the custody of his child without any determination for over a year that he's an unfit father? Without having a full record in front of me, I would have a hard time answering that question one way or the other. If you're asking whether a determination should be made rapidly in such cases, the answer is, of course, yes. Isn't that an issue which should have been tried out by the district court in this case? Exhaustion of tribal court remedies doesn't have a timeliness component. Certainly, in the case of Mr. Boozer, he has made substantial and significant use of the tribal court proceedings. If he wanted to have an expedited hearing, I'm sure he could ask for one. If he wanted to seek, for example, review of the determination that the tribal court made of jurisdiction, that's something jurisdiction is always appealable. When you say, you say that the Federal Constitution as such doesn't apply to Indian tribes. That's correct. But the Indian Civil Rights Act does. Yes. Does that mean that Mr. Boozer has, even if his Federal constitutional rights were being impeded by the application of the Indian Child Welfare Act, could not sue regarding that statute as impeding his liberty rights, his Federal constitutional liberty rights? For deprivation against a tribe where the Federal Constitution doesn't apply to the tribe? Well, the question is who would be the defendant. I'm not sure. But if this is all the result of a statute which is giving the tribe at least initial jurisdiction with the result that he is not having the care and custody of her child in the meanwhile, that is a Federal constitutional enactment. It's not the result of an action by the Indian tribe. Right? That jurisdiction is in the tribal court? Right. If you believe that jurisdiction only derives from the Indian Child Welfare Act, yes. Here, however, there was a preexisting divorce proceeding, in which case both parties were present in front of the tribal court. And as well, it's hard to get around the fact that domicile notwithstanding, KWB resided on the Colville Reservation both before and after her mother's death and has significant ties to the reservation. The ICWA and Congress recognition of the importance of tribal culture and heritage is only one aspect which lends itself to justifying the continued jurisdiction of the tribal court. There is another question about this statute. We know what domicile means from Holyfield. Do we know what residence means? No. The simplest answer, perhaps, of the day. There is no clear guidance with respect to the Indian Child Welfare Act as to what residency means. I have to assume that it means living where a person is living. And, of course, if that's the case, then certainly KWB living on the reservation with her mother both before and after. But there would be a question whether residence in the case of a child whose only parent lives somewhere else can be somewhere other than where the parent resides. Certainly. And that would be an issue that — and this is one — frankly, this is one of the difficulties with this case. It would be nice to have a full record where all of these issues had been explored. At the present time, those issues aren't out there. There isn't a record out there on which to make an easy decision. Another reason why exhaustion would seem to be appropriate. Well, what is your understanding of the consequences of exhaustion? Suppose they're finished exhausting, and now they come back to state court — federal court. And let's assume that there isn't any jurisdictional problem. We've solved that in terms of habeas and so on. Does the federal court have to pay any attention to what the tribal court did at that point? For example, with the question of whether she was a resident or wasn't a resident? I believe that, at that point, it would be appropriate to see whether the federal — or whether the tribal court, in the process of making the determination, violated one of the constitutional rights outlined in 25 U.S.C. 1302. That's where the habeas corpus would come from. Wouldn't it be appropriate to ask the question, ab initio, whether or not this child was properly subject to the jurisdiction of the tribal court at all? In front of federal court? I don't believe so. I believe that it's always the first decision made by a court to determine its own jurisdiction. And, of course — You're not really talking exhaustion there. You're saying that the tribal court's jurisdictional determination under the Indian Child Welfare Act is going to be determinative. I'm sorry. I don't think I am — You're saying, in your view, that the tribal court's determination under the Indian Child Welfare Act of its own jurisdiction is going to be determinative. It is going to be determinative for the actions that occur in front of that tribal court. Now, of course, that doesn't ignore the fact that an appellant always has the ability to seek an appeal based on subject matter or personal jurisdiction, providing that all of the information, the ability to make those arguments, have been maintained. In this particular instance, I haven't thought about whether this would be subject matter or personal jurisdiction, but assuming that it's subject matter jurisdiction for a moment, subject matter jurisdiction is always an issue for an appellate court to review. And that's true of the Colville Appellate Court as well as it is of the Ninth Circuit. One thing that troubles me about your assertion that we don't follow necessarily the United States Constitution, Mr. Boozer is not an Indian. He's not a member of this tribe. And if we were to take your statement at face value, you're depriving him of his federal constitutional rights. One of the best statements appears in a case, Naukai versus the Navajo Tribal Court. And in that particular instance, although it was a Navajo member who was also suing the Navajo Council, the Supreme Court recognized that the U.S. Constitution didn't apply to tribal government. Again, the question is, and perhaps it is a reflection on how jurisprudence has changed since the crafting of the Constitution, but the Constitution originally was a document to restrain government. The fact is that does the U.S. Constitution restrain tribal government? The answer from the U.S. Supreme Court has been no, which has caused the passage of the Indian Civil Rights Act, which is 25 U.S.C. 1302. I understand the misgivings that that may present. However, that is or has been what the U.S. Supreme Court stands on this event. That's why I focused earlier on the fact that the question – the fact that he is being subject to the jurisdiction or that you argue he's being subject to the jurisdiction as a tribal court in this instance derives from a federal statute. And that seems to me has to be governed by – there is a government there. It's the federal government that is – if anybody is authorizing this jurisdiction, it's the federal government that's saying that the tribal government – tribal court can assert jurisdiction over a non-Indian who is not on the reservation and hasn't been. And therefore, there is a government here. And I don't see how the federal Constitution can back out. I understand that issue, and it's a discussion that I've had with others who have been wondering the same thing. But the fact is, that has been the holding of the U.S. Supreme Court. In this particular context, i.e., in the context in which there is a federal statute that gives jurisdiction to tribal courts over certain matters, it's a fascinating case all around. If you have nothing else to say, or if you have too many things to say, we thank you for your argument. Thank you. We will give you one minute or so. Okay. Thank you, Your Honor. Your Honors. Just briefly, as for the writ being applicable under federal law, I've cited at page 4 of my opening brief, the case of Cobell v. Cobell, that's a Ninth Circuit case. That's right, but it's before the Supreme Court came, before layman, which decided that there isn't jurisdiction under the federal statute. Now, you haven't ñ neither of you have briefed on it. If we want more on that, we will ask for briefs about it. Okay. On the habeas corpus issue? Okay. Thank you, Your Honor. Basically, then I would just turn to this proposition. The disaustion is not necessary under those three circumstances that I mentioned. But then now, just recently in a straight versus A1 contractors, that was a United States Supreme Court decision, and more recently in Nevada v. Hicks, which was a 2001 Supreme Court decision, although not expressly on ICWA, it did indicate that if it is clear that a tribal court does not have jurisdiction on its face, if it's clear, then you need not apply the exhaustion doctrine. Okay. Thank you. Thank you very much. We thank counsel for their help with this. The case of Boozer v. Wilder is submitted.  Thank you very much.
judges: B. Fletcher, Hamilton, Berzon